LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

ALFONSO ESCALANTE ROJAS and
FLORENTINO BAUTISTA,
*on behalf of themselves, FLSA Collective Plaintiffs,*
*and the Class,*                                                              Case No.:

                        Plaintiffs,                              **CLASS AND**
                                             **COLLECTIVE ACTION**
                                             **COMPLAINT**

                        v.                                            **Jury Trial Demanded**

PIZZA PETE'S LLC
        d/b/a PIZZA PETE'S,
PFKM CO LLC
        d/b/a BRAVO PIZZA,
12 APOSTLES LLC
        d/b/a BRAVO PIZZA,
MFKA ENTERPRISES INC.
        d/b/a BRAVO PIZZA,
BEK 1 LLC
        d/b/a BRAVO PIZZA,
HASHEM MELECH INC.
        d/b/a BRAVO PIZZA,
LFL ENTERPRISES INC.
        d/b/a BRAVO PIZZA,
ASFJ ENTERPRISES INC.
        d/b/a BRAVO KOSHER PIZZA,
18 PIZZA LLC
        d/b/a BRAVO KOSHER PIZZA,
JASK ENTERPRISES INC.
        d/b/a FRANKIE BOY'S PIZZA,
FRANK LIBRETTA, MICHAEL LIBRETTA,
TANIA FELLUS, and KENNETH FELLUS,

                         Defendants.
_____

Plaintiff ALFONSO ESCALANTE ROJAS ("Plaintiff ROJAS") and Plaintiff FLORENTINO BAUTISTA ("Plaintiff BAUTISTA") (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants PIZZA PETE'S LLC d/b/a PIZZA PETE'S, PFKM CO LLC d/b/a BRAVO PIZZA, 12 APOSTLES LLC d/b/a BRAVO PIZZA, MFKA ENTERPRISES INC d/b/a BRAVO PIZZA, BEK 1 LLC d/b/a BRAVO PIZZA, HASHEM MELECH INC d/b/a BRAVO PIZZA, LFL ENTERPRISES INC d/b/a BRAVO PIZZA, ASFJ ENTERPRISES INC d/b/a BRAVO KOSHER PIZZA, 18 PIZZA LLC d/b/a BRAVO KOSHER PIZZA, JASK ENTERPRISES INC. d/b/a FRANKIE BOY'S PIZZA, (collectively, the "Corporate Defendants"), FRANK LIBRETTA, MICHAEL LIBRETTA, TANIA FELLUS, and KENNETH FELLUS (collectively, the "Individual Defendants"; and together with the Corporate Defendants, "Defendants"), and state as follows:

## INTRODUCTION

1.    Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages including overtime, due to invalid tip credit, (2)  unpaid overtime, (3) unpaid wages due to time-shaving, (4) liquidated damages, and (5) attorneys' fees and costs.

2.    Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages including overtime, due to invalid tip credit, (2) unpaid spread of hours premiums, (3) unpaid wages due to time-shaving,  (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.     Plaintiff ROJAS is a resident of Richmond County, New York.

6.     Plaintiff BAUTISTA is a resident of Bronx County, New York.

7.     Defendants operate a chain of pizzerias as a single integrated enterprise under the trade names "Pizza Pete's," "Bravo Pizza," "Bravo Kosher Pizza," and "Frankie Boy's Pizza" at the following locations in New York City:

   a.   528 Columbus Avenue, New York, NY 10024 ("Pizza Pete's")

   b.   107 West 37th Street, New York, NY 10018 ("Bravo Kosher Pizza Midtown");

   c.   17 Trinity Place, New York, NY 10006 ("Bravo Kosher Pizza Financial District");

   d.   115 East 14th Street, New York, NY 10003 ("Bravo Pizza Union Square");

   e.   360 7th Avenue, New York, NY 10001 ("Bravo Pizza 7th Avenue");

   f.   413 New Dorp Lane, Staten Island, NY 10306 ("Bravo Pizza Staten Island");

   g.   257 Park Avenue South, New York, NY 10010 ("Bravo Pizza Gramercy");

   h.   6 East 42nd Street, New York, NY 10036 ("Bravo Pizza 42nd Street");

   i.   902 Kings Highway, Brooklyn, NY 11223 ("Bravo Kosher Pizza Brooklyn");

   j.   6926 Main Street, Flushing, NY 11367 ("Bravo Pizzeria and Restaurant"); and

   k.   1367 Broadway, New York, NY 10018 ("Frankie Boy's");
        (collectively, the "Restaurants").

8.     The Restaurants are operated by Defendants as a single integrated enterprise. The Restaurants are commonly owned by Defendants. The Restaurants are advertised on the following websites: https://www.pizzapetesmenu.com/, https://www.bravopizzany.com, https://www.bravopizzaqueens.com/, https://www.bravobrooklyn.com, and https://www.bravokosherpizza.com. Amongst Defendants' Restaurants, the Frankie Boy's location advertises through an Instagram page at the following address: https://www.instagram.com/frankieboyspizza/. See **Exhibit A** for a reproduction of the aforementioned websites. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

a.   The Restaurants share similar menus. Although variations may exist amongst the offerings for each of Defendants' Restaurants, it is evident that a prominent focus of each of these establishments is centered around the serving of New York-style pizza. See **Exhibit B** for a reproduction of each the menus used at Defendants' Restaurants.

b.   Supplies are interchangeable among the Restaurant locations;

c.   Employees are interchangeable among the Restaurant locations; and

d.   The Restaurants share payroll methods and have a single, centralized system of labor relations for employees.

9.     In addition, each of the following online articles further establishes that the Restaurants are owned and operated by Defendants as single integrated enterprise:

a.   Attached hereto as **Exhibit C** is a January 28, 2020 article published on *Staten Island Live*'s website, at https://www.silive.com/entertainment/2020/01/bravo-pizza-comes-to-the-former-gennaros-location.html, describing the anticipated

4

opening of a Bravo Pizza location on Staten Island, and states: "[Michael] Libretta, whose family owns five other parlors—including Frankie Boy, Pizza Pete's and three Bravo-Brand parlors, all in Manhattan." This article additionally notes that in preparation for the opening of the Staten Island Bravo Pizza location, Individual Defendants were "training the kitchen crew at the 7th Avenue [Bravo] location."

b.  Attached hereto as **Exhibit D** is a February 6, 2019 on *Kosher Squared*'s website, at   https://koshersquared.com/bravo-pizza-coming-to-brooklyn/, anticipating the opening of the Brooklyn Restaurant location and stating the following:

> *Bravo's has quite an interesting story when it comes to the kosher market.*
>
> *Originally a wholly non-kosher chain of pizza stores scattered throughout Manhattan, that changed with the Midtown location on Broadway becoming kosher. . . .*
>
> *The store eventually relocated to 107 West 37th, and a non-kosher pizza store called Frankie Boy's took its place at the original location on Broadway. This move just a block away was due to the popularity of the original location. . . . Bravo opened another location downtown on Trinity Place.*

c.  Attached hereto as **Exhibit E** is a January 30, 2018 article published on *Great Kosher Restaurants Magazine*'s website, at https://www.greatkosherrestaurants.com/restaurants/3988/bravo-pizzeria-and-restaurant-queens, describing the Flushing Restaurant location and stating the following:

> *Following on from the success of Bravo Pizza and with many requests to open elsewhere Tania and Warren Fellus decided to take this family business to Queens, where they took over the old La Bella restaurant and turned it into Bravo Pizzeria on one side and Bravo Restaurant on the other, each with their own separate entrances. This is a true family business with the Pizzeria being overseen by son Joseph Fellus and the Restaurant by daughter Tiffany Fellus . . . .*

> *After a had a full renovation and the replacement of all the*
> *restaurant equipment, the Fellus family have really invested in this true*
> *family owned and run business. This continues with the day to day*
> *operations, as son Joseph personally takes care of sourcing all the*
> *ingredients . . . .*
>
> *With the Pizzeria following the menu of the Manhattan branch you*
> *can pick up all your favorite slices and pies at the Queens location knowing*
> *you have all the original flavors and tastes.*

10.    Corporate Defendant PIZZA PETE'S LLC d/b/a PIZZA PETE'S is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and address for service of process located at c/o Frank Libretta, 529 Columbus Avenue, New York, NY 10024.

11.    Corporate Defendant PFKM CO LLC d/b/a BRAVO PIZZA is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 115 East 14th Street, New York, NY 10003 and an address for service of process located c/o Kenneth Fellus, 115 East 14th Street, New York, NY 10003.

12.    Corporate Defendant 12 APOSTLES LLC d/b/a BRAVO PIZZA is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business at 6 East 42nd Street, New York, NY 10036, and an address for service of process located at 13248 Telecom Drive, Tampa, FL 33637.

13.    Corporate Defendant MFKA ENTERPRISES INC d/b/a BRAVO PIZZA is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 360 7th Ave., New York, NY 10001, and an address for service of process located at c/o Legalinc Corporate Services Inc., 1967 Wehrle Drive, Suite 1—086, Buffalo, NY 14221.

14.     Corporate Defendant BEK 1 LLC d/b/a BRAVO PIZZA is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 257 Park Ave South, New York, NY 10036 and an address for service of process located at c/o Elbasan Lajqi, 25 Lindsey Lane, Putnam Valley, NY 10579.

15.     Corporate Defendant HASHEM MELECH INC. d/b/a BRAVO PIZZA, is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 6926 Main Street, Flushing, NY 11367, and an address for service of process located at c/o Corporation Service Company, 80 State Street, Albany, NY 12207.

16.     Corporate Defendant LFL ENTERPRISES INC d/b/a BRAVO PIZZA is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and address for service of process located at 413 New Dorp Lane, Staten Island, NY 10306.

17.     Corporate Defendant ASFJ ENTERPRISES INC d/b/a BRAVO KOSHER PIZZA is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 107 West 37th Street, New York, NY 10018 and an address for service of process located at c/o Kenneth Fellus, 4 Green Drive, Roslyn, NY 11576.

18.     Corporate Defendant 18 PIZZA LLC d/b/a BRAVO KOSHER PIZZA is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 17 Trinity Place, New York, NY 10006, and an address for service of process located at c/o David Abrams, 17 Trinity Place, New York, NY 10006.

19.     Corporate Defendant JASK ENTERPRISES INC. d/b/a FRANKIE BOY'S PIZZA, is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 1367 Broadway, New York, NY 10018, and an address for

7

service of process located at c/o Mango & Iacoviello LLP, 14 Penn Plaza, Suite 1919, New York, NY 10122.

20.     Individual Defendant FRANK LIBRETTA is an owner and principal of the Corporate Defendants. Defendant FRANK LIBRETTA exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. Defendant FRANK LIBRETTA frequently visited each of the Restaurant locations. Defendant FRANK LIBRETTA exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant FRANK LIBRETTA directly regarding any of the terms of their employment, and Defendant FRANK LIBRETTA had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly. Defendant FRANK LIBRETTA possesses the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members and can reprimand employees.

21.     Individual Defendant MICHAEL LIBRETTA is an owner and principal of the Corporate Defendants. Defendant MICHAEL LIBRETTA exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. Defendant MICHAEL LIBRETTA frequently visited each of the Restaurant locations. Defendant MICHAEL LIBRETTA exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of

Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant MICHAEL LIBRETTA directly regarding any of the terms of their employment, and Defendant MICHAEL LIBRETTA had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly. Defendant MICHAEL LIBRETTA possesses the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members and can reprimand employees.

22.    Individual Defendant TANIA FELLUS is an owner and principal of the Corporate Defendants. Defendant TANIA FELLUS exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. Defendant TANIA FELLUS frequently visited each of the Restaurant locations. Defendant TANIA FELLUS exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant TANIA FELLUS directly regarding any of the terms of their employment, and Defendant TANIA FELLUS had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly. Defendant TANIA FELLUS possesses the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members and can reprimand employees.

23.    Individual Defendant KENNETH FELLUS is an owner and principal of the Corporate Defendants. Defendant KENNETH FELLUS exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. Defendant KENNETH FELLUS frequently visited each of the Restaurant locations. Defendant KENNETH FELLUS exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant KENNETH FELLUS directly regarding any of the terms of their employment, and Defendant KENNETH FELLUS had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly. Defendant KENNETH FELLUS possesses the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members and can reprimand employees.

24.    At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

25.    At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

26.    Although Plaintiffs did not work at all of the Restaurants, the Restaurants are appropriately named in this Complaint through the relevant Corporate Defendants described above. Because the Restaurants share identical illegal wage and hour policies, the Restaurants and

the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the Class Members for whom Plaintiffs seek to represent.

## FLSA COLLECTIVE ACTION ALLEGATIONS

27.   Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including but not limited to, cooks, cashiers, delivery persons, bussers, and food preparers, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

28.   At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs have been and are similarly situated, have had substantially similar job requirements and pay provisions, and have been and are subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules—all of which have culminated in a willful failure and refusal to pay Plaintiffs and FLSA Collective Plaintiffs their (i) proper wages due to Defendants' time-shaving, and (ii) proper overtime. A subclass of tipped employees also have a claim for unpaid wages due to an invalid tip credit and illegally retained gratuities. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

29.   The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

30.   Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure

("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees, including but not limited to, cooks, cashiers, delivery persons, bussers and food preparers, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "Class," or "Class Members").

31.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

32.    The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees comprised of, but not limited to, bussers, food preparers, and delivery persons (the "Tipped Subclass") who also number more than forty (40). Plaintiffs are members of the Class and the Tipped Subclass.

33.    Plaintiffs' claims are typical of those claims that may be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subjected to the same corporate practices of Defendants, including (i) unpaid overtime compensation, (ii) unpaid wages due to a policy of time-shaving, (iii) unpaid spread of hours compensation, (iv) failing to provide wage statements in

compliance with the New York Labor Law, and (iv) failing to provide wage and hour notices upon hiring and as required thereafter, pursuant to the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

34.    With regard to Plaintiffs and the Tipped Subclass, Defendants failed to pay them the proper minimum wage and proper overtime due to Defendants' policy and practice of claiming an invalid tip credit. Defendants were not entitled to claim any tip credit as Defendants failed to meet the statutory requirements under the New York Labor Law. Plaintiffs and the Tipped Subclass suffered from Defendants' failure to pay proper wages due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) failed to inform Plaintiffs and the Tipped Subclass that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by them; (iii) failed to inform Plaintiffs and the Tipped Subclass that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement; (iv) failed to inform Plaintiffs and the Tipped Subclass that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement; (iv) claimed a tip credit for all hours worked by Plaintiffs and the Tipped Subclass despite having caused Plaintiffs and the Tipped Subclass to engage in non-tipped duties for hours exceeding 20% of the total hours worked each week; (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (vi) failed to accurately keep track of daily tips earned and maintain records thereof. In addition, Defendants illegally retained gratuities from Plaintiffs and the Tipped Subclass by retaining a "delivery fee" without informing

customers that such a fee did not constitute a gratuity and would not be wholly remitted to tipped employees.

35.     Defendants' corporate-wide policies and practices affected all Class members. Similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damage arising from the same unlawful policies, practices, and procedures by Defendants.

36.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

37.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action

would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

38.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

39.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

      a.    Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

      b.    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class members;

      c.    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and the Class members for their work;

d.   Whether Defendants properly notified Plaintiffs and the Class members of their hourly rates and overtime rates;

e.   Whether Defendants properly compensated Plaintiffs and Class members their overtime premiums for all hours worked in excess of forty (40);

f.   Whether Defendants properly provided notice to Plaintiffs and the Tipped Subclass that Defendants were taking a tip credit;

g.   Whether Defendants accurately tracked the amount of tips earned each day and maintained records therefore;

h.   Whether Defendants caused Plaintiffs and the Tipped Subclass to engage in non-tipped duties exceeding 20% of each workweek;

i.   Whether Defendants took the proper amount of tip credit allowance for each payment period under the New York Labor Law;

j.   Whether Defendants subjected Plaintiffs and the Tipped Subclass to an invalid tip pooling policy;

k.   Whether Defendants retained or failed to remit gratuities to Plaintiffs and the Tipped Subclass;

l.   Whether Defendants paid Plaintiffs and Class members their spread of hours premium;

m.   Whether Defendants provided proper wage statements informing (i) Plaintiffs and the Tipped Subclass of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the New York Labor Law; and

n.   Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law.

**STATEMENT OF FACTS**

*Plaintiff ROJAS:*

40.   In or around June 2016, Plaintiff ROJAS was hired by Defendants to work as a delivery person for Defendants' Pizza Pete's Restaurant, located at 528 Columbus Avenue, New York, NY 10024. Plaintiff ROJAS' employment ended in or around August 2021.

41.   From the start of his employment until in or around March 2018, Plaintiff ROJAS was scheduled to work on Tuesdays to Saturdays, from 4:00 p.m. to 11:00 p.m., and on Sundays, from 10 a.m. to 11p.m. for a total of forty-eight (48) hours per week. From in or around March 2018 until around January 2019, Plaintiff ROJAS was scheduled to work on Mondays to Saturdays, from 4:00 p.m. to 11:00 p.m., and on Sundays from 10 a.m. to 11 p.m. for a total of fifty-five (55) hours per week. From in or around January 2019 until the end of his employment around August 2021, Plaintiff ROJAS was scheduled to work on Wednesdays to Saturdays, from 4:00 p.m. to 11:00 p.m., and on Sundays from 10 a.m. to 11 p.m. for a total of forty-one (41) hours per week.

42.   From the start of his employment until September 2016, Plaintiff ROJAS was paid at a rate of six ($6) dollars an hour. From September 2016 until in or around January 2019, Plaintiff ROJAS was paid eight ($8) dollars an hour. From in or around January 2019 until the end of his employment in August 2021, Plaintiff ROJAS was paid ten ($10) dollars an hour. Plaintiff ROJAS was paid at a rate below the minimum wage rate. Similarly, FLSA Collective Plaintiffs and Class members were paid at a tipped rate below the minimum wage rate.

43.    From the start of his employment until January 2019, Plaintiff ROJAS was not paid for all of his overtime hours worked in excess of forty (40). Once Plaintiff ROJAS complained in January 2019, Defendants began to pay Plaintiff ROJAS his proper overtime premium.

44.    Throughout Plaintiff ROJAS' employment, Defendants routinely forced Plaintiff ROJAS to partake in a significant amount of off-the-clock work. Although he had already clocked out at the end of his shift, Plaintiff was required by Defendants' to make one final delivery that would take at least twenty (20) mins before he would go home. Plaintiff would regularly make these off-the-clock deliveries about five (5) times per week. Defendants were fully aware that Plaintiff ROJAS had already clocked out, suggesting that, at Defendants' Restaurants, there is a culture of encouraging and forcing employees to take part in work activities that they would not be compensated for. FLSA Collective Plaintiffs and Class members were similarly required to perform off-the-clock work.

45.    Plaintiff ROJAS frequently worked in excess of ten (10) hours a day. However, Defendants failed to compensate Plaintiff ROJAS for his spread of hours premium. Class members similarly worked days in excess of ten (10) hours and were also not compensated for their spread of hours premium. Class members were similarly subjected to Defendants' unlawful practice of unpaid spread of hours premium.

46.    Throughout Plaintiff ROJAS' employment with Defendants, Defendants retained half of the delivery fee charged to customers. This amount would vary between five ($5) to twenty ($20) dollars per delivery depending on the distance. At all relevant times to this action, customers believed that their delivery fees were tips to be retained by Plaintiff ROJAS and there was notice that the delivery fees were not gratuities. Similarly, FLSA Collective Plaintiffs and Class members were routinely denied their tips due to the belief that the delivery fees were their tips.

47.     Throughout his employment, Plaintiff ROJAS was often paid in cash. When this was the case, Defendants periodically withheld an amount of twenty-five (25) dollars for "taxes" from Plaintiff ROJAS' weekly wages. FLSA Collective Plaintiffs and Class members were similarly paid in cash and would periodically be subjected to Defendants' unlawful practice of withholding amounts from their weekly salary.

*Plaintiff BAUTISTA:*

48.     In or around February 2020, Plaintiff BAUTISTA was hired by Defendants to work as a delivery person for Defendants' Pizza Pete's Restaurant, located at 528 Columbus Avenue, New York, NY 10024. Plaintiff's employment ended in or around May 2021.

49.     From the start of his employment with Defendants to March 2020, Plaintiff BAUTISTA was scheduled to work on Mondays, from 10:00 a.m. to 11:00 p.m., and on Tuesdays, Fridays, Saturdays and Sundays, from 4:00 p.m. to 11:00 p.m. for a total of approximately forty-one (41) hours each week. In or around March 2020 to April 2020 Plaintiff BAUTISTA was scheduled to work on Mondays and Tuesday, from 10:00 a.m. to 11:00 p.m., and on Wednesdays, Thursdays, Fridays, Saturdays and Sundays, from 4:00 p.m. to 11:00 p.m. for a total of approximately sixty-one (61) hours each week. Starting in or around April 2020 to the end of his employment, Plaintiff BAUTISTA was scheduled to work on Mondays, from 10:00 a.m. to 11:00 p.m., and on Tuesdays, Fridays, Saturdays and Sundays, from 4:00 p.m. to 9:00 p.m. for a total of approximately thirty-three (33) hours each week.

50.     Throughout his employment, Plaintiff BAUTISTA was paid in cash at a tipped rate of ten ($10) dollars per hour. Similarly, FLSA Collective Plaintiffs and Tipped Class members were paid at a rate below the minimum wage rate.

51.    Throughout Plaintiff BAUTISTA's employment, Defendants routinely forced Plaintiff BAUTISTA to partake in a significant amount of off-the-clock work. Although he had already clocked out at the end of his shift, Plaintiff was required by Defendants' to make one final delivery that would take at least twenty (20) mins before he would go home. Plaintiff would regularly make these off-the-clock deliveries about five (5) times per week. Defendants were fully aware that Plaintiff BAUTISTA had already clocked out, suggesting that, at Defendants' Restaurants, there is a culture of encouraging and forcing employees to take part in work activities that they would not be compensated for. FLSA Collective Plaintiffs and Class members were similarly required to perform off-the-clock work.

52.    Plaintiff BAUTISTA worked in excess of ten (10) hours a day at least three times per week. However, Defendants failed to compensate Plaintiff BAUTISTA for his spread of hours premium. Class members similarly worked days in excess of ten (10) hours and were also not compensated for their spread of hours premium.

53.    Throughout Plaintiff BAUTISTA'S employment with Defendants, Defendants retained half of the delivery fee charged to customers. This amount would vary between five ($5) to twenty ($20) dollars per delivery depending on the distance. At all relevant times to this action, customers believed that their delivery fees were tips to be retained by Plaintiff BAUTISTA and there was notice that the delivery fees were not gratuities. Similarly, FLSA Collective Plaintiffs and Class members were routinely denied their tips due to the belief that the delivery fees were their tips.

54.    Throughout his employment, Plaintiff BAUTISTA was often paid in cash. When this was the case, Defendants periodically withheld an amount of thirty ($30) to thirty-five ($35) dollars for "taxes" from Plaintiff BAUTISTA's weekly wages. FLSA Collective Plaintiffs and

Class members were similarly paid in cash and would periodically be subjected to Defendants'

unlawful practice of withholding amounts from their weekly salary.

*Wage And Hour Allegations:*

55.    At all relevant times, Plaintiffs, a subclass of FLSA Collective Plaintiffs, and the

Tipped Subclass were paid below the minimum wage at an invalid tip credit minimum wage.

Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because

Defendants (i) failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to

inform them that the tip credit claimed by Defendants cannot exceed the amount of tips actually

received by them in violation of the FLSA; (iii) failed to inform that all tips received by them are

to be retained by them except pursuant to a valid tip pooling arrangement in violation of the FLSA;

(iv) failed to inform that tip credit will not apply unless they have been informed of the foregoing

tip credit notice requirement in violation of the FLSA; (v) claimed tip credit for all hours worked

despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty

(20) percent of the total hours worked each workweek in violation of the FLSA and NYLL; (vi)

failed to accurately track daily tips earned or maintain records thereof; (vii) failed to properly

provide tip credit notice at hiring and annually thereafter in violation of the NYLL; (viii) failed to

provide a proper wage statement with every payment of wages informing Plaintiff and other tipped

employees of the amount of tip credit deducted for each payment period, in violation of the NYLL;

and (ix) illegally retained gratuities.

56.    Plaintiffs, a subclass of FLSA Collective Plaintiffs, and the Tipped Subclass were

required to dedicate more than 20% of their working time performing non-tipped related activities,

such as cleaning the kitchen, bringing in supplies and ingredients to the pizza-men, sweeping and

mopping the restaurant, and doing general porter work. At all relevant times, Plaintiffs, a subclass

of FLSA Collective Plaintiffs, and the Tipped Subclass were compensated at the tipped credit minimum wage rate or below, despite the fact that they engaged in non-tipped activities for hours exceeding 20% of the total hours worked each week.

57.    At all relevant times to this action, Plaintiffs, a subclass of FLSA Collective Plaintiffs, and the Tipped Subclass suffered from Defendants' illegal retention of gratuities. Defendants illegally retained gratuities on deliveries by retaining at least half of the "delivery fee" on all deliveries. Customers were not informed that such fees were not considered a gratuity and would not be entirely distributed to tipped employees, but would instead be retained by Defendants. On such deliveries, customers did not "tip" because they believed that the "delivery fee" was the gratuity.

58.    Defendants failed to provide spread of hours premium when Plaintiff and the Class members worked days in excess of ten (10) hours, in violation of the New York Labor Law.

59.    Defendants failed to provide Plaintiffs and the Class members with proper wage notices at hiring and annually thereafter. Plaintiffs did not receive proper wage notices either upon being hired or annually since the date of hiring in violation of the New York Labor Law.

60.    Plaintiffs and Class members received wage statements that were not in compliance with the New York Labor Law. Defendants are required to provide itemized listings of allowances taken on a wage statement with every payment of wages. Defendants failed to satisfy the requirements under the NYLL because the wage statements did not clearly include tip credit allowance for each payment period. Plaintiffs and Class members also received fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation.

61.     Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage, and the proper overtime rate thereof for hours worked over forty (40) in a workweek to Plaintiffs, FLSA Collective Plaintiffs, and Class members. Defendants were not entitled to claim any tip credits under the FLSA or NYLL.

62.     Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiffs and Class members, in violation of the NYLL.

63.     Defendants knowingly and willfully operated their business with a policy of illegally retaining gratuities, in violation of the FLSA and the NYLL.

64.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.

65.     Defendants failed to provide proper wage notices to employees, at the beginning of employment and annually thereafter, pursuant to the requirements of the NYLL.

66.     Plaintiffs retained Lee Litigation Group, PLLC to represent themselves, FLSA Collective Plaintiffs, and Class members in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### ON BEHALF OF PLAINTIFFS AND FLSA COLLECTIVE PLAINTIFFS

67.     Plaintiffs reallege and reaver Paragraphs 1 through 66 of this Class and Collective Action Complaint as fully set forth herein.

68.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiff, and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

69.    At all relevant times, Defendants employed Plaintiffs, and FLSA Collective Plaintiffs within the meaning of the FLSA.

70.    At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

71.    At all relevant times, Defendants had a policy and practice of failing to pay the statutory minimum wage and overtime to Plaintiffs and FLSA Collective Plaintiffs for all their hours worked. Defendants failing to pay wages and overtime due to invalid tip credit under the FLSA.

72.    At all relevant times, Defendants had a policy and practice of illegally retaining gratuities.

73.    Records, if any exist, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Class and Collective Action Complaint to set forth the precise amount due.

74.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

24

75.    At all relevant times, Defendants had a policy and practice of illegally retaining gratuities.

76.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

77.    Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages and overtime due to invalid tip credit, unpaid wages due to time shaving, illegally retained gratuities, plus an equal amount as liquidated damages.

78.    Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

### VIOLATION OF THE NEW YORK LABOR LAW
### ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS

79.    Plaintiffs reallege and reaver Paragraphs 1 through 78 of this Class and Collective Action Complaint as fully set forth herein.

80.    At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

81.    Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them the statutory minimum wage and proper overtime premium for their lawful hours worked due to time-shaving.

82.    Defendants willfully violated Plaintiffs' and the Tipped Subclasses' rights by failing to pay statutory minimum wage and failing to pay overtime due to an invalid tip credit.

83.    Defendants willfully violated Plaintiffs' and the Tipped Subclasses' rights by illegally retaining gratuities.

84.    Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay "spread of hours" premium to them for each workday that exceeded ten (10) hours.

85.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law. Defendants are required to provide itemized listings of deductions taken on each wage statement.

86.    Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

87.    Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid minimum wage and overtime premium due to an invalid tip credit, spread of hours premiums, unpaid wages due to time shaving, illegally retained gratuities, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs, and Class members, respectfully request that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by

law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.   An award of unpaid wages due under the FLSA and the New York Labor Law, including those due to Defendants' time-shaving practices;

d.   An award of unpaid wages due under the FLSA and the New York Labor Law; including those due to an invalid tip credit;

e.   An award of unpaid "spread of hours" premium due under the New York Labor Law;

f.   An award of damages representing Defendants' illegal retention of gratuities;

g.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

h.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the New York Labor Law;

i.   An award of prejudgment and postjudgment interest, costs, and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j.   Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

k.   Designation of this action as a class action pursuant to F.R.C.P. 23;

l.   Designation of Plaintiffs as Representatives of the Class; and

m.   Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: March 14, 2022

                                        Respectfully submitted,

                              By:    */s/ C.K. Lee*
                                     C.K. Lee, Esq.

                                     LEE LITIGATION GROUP, PLLC
                                     C.K. Lee (CL 4086)
                                     Anne Seelig (AS 3976)
                                     148 West 24th Street, Eighth Floor
                                     New York, NY 10011
                                     Tel.: 212-465-1188
                                     Fax: 212-465-1181
                                     *Attorneys for Plaintiffs,*
                                     *FLSA Collective Plaintiffs,*
                                     *and the Class*